# Divestiture of Stock and Purchase of Government Bonds by an Incoming Secretary of the Treasury

The incoming Secretary of the Treasury may purchase government bonds with the proceeds of a stock sale pursuant to a certificate of divestiture properly issued under 26 U.S.C. § 1043 and without violating the prohibition of 31 U.S.C. § 329, provided that he purchases the bonds after his commission is signed by the President but before he takes the oath of office or enters on his duties as Secretary of the Treasury.

June 22, 2006

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF GOVERNMENT ETHICS

You have asked for our opinion on whether and how an incoming Secretary of the Treasury may buy government bonds with the proceeds of a stock sale pursuant to a "certificate of divestiture" under 26 U.S.C. § 1043 (2000) consistent with 31 U.S.C. § 329 (2000), which forbids the Secretary from "be[ing] involved in buying or disposing of obligations of a State or the United States Government."[1] We believe that a certificate of divestiture under 26 U.S.C. § 1043 would be available when the President signs the incoming Secretary's commission, but that the incoming Secretary would not become subject to 31 U.S.C. § 329 until he takes the oath of office or otherwise begins his duties. Accordingly, we conclude that the incoming Secretary may purchase government bonds pursuant to a certificate of divestiture properly issued under 26 U.S.C. § 1043 and without violating the prohibition of 31 U.S.C. § 329, provided that he purchases the bonds after his commission is signed by the President but before he takes the oath of office or enters on his duties as Secretary of the Treasury.

## I.

The President has nominated Henry M. Paulson, Jr., to be Secretary of the Treasury: Mr. Paulson is currently the Chairman and Chief Executive Officer of The Goldman Sachs Group, Inc. ("Goldman Sachs"), and holds a large stake in the stock of that company. The Office of Government Ethics ("OGE") has determined that, to comply with conflict of interest rules and standards, Mr. Paulson will have to sell this stock if he becomes the Secretary.

Recognizing the extraordinary tax liability that incoming officers and employees of the government might incur when forced to sell property for such reasons,

---

[1] Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from Marilyn L. Glynn, General Counsel, Office of Government Ethics (June 9, 2006). Your question covers the Secretary of the Treasury and the Treasurer of the United States, both of whom are subject to 31 U.S.C. § 329. In this opinion, we refer to the Secretary, but our analysis would cover both officers.

Congress has provided a mechanism for deferral of the tax. The President or the Director of OGE may issue a "certificate of divestiture" to "an eligible person," which the statute defines as "an officer or employee of the executive branch of the Federal Government." 26 U.S.C. § 1043(a), (b)(1). The issuance of such a certificate is predicated on a finding that "divestiture of specific property is reasonably necessary to comply with any Federal conflict of interest statute, regulation, rule, or executive order (including section 208 of title 18, United States Code), or requested by a congressional committee as a condition of confirmation." 26 U.S.C. § 1043(b)(2). The certificate permits deferral of federal tax on the sale of the property if the proceeds of the sale are invested in "permitted property," defined as "any obligation of the United States or any diversified investment fund approved by regulations issued by the Office of Government Ethics." *Id*. § 1043(a), (b)(3).

We are informed that the sale of Mr. Paulson's stock will generate a large sum of money; that it would be unduly risky to invest the entire sum in equities or equity funds; and that he therefore would invest a portion in less risky securities, including government bonds. Such bonds are ordinarily "permitted property" under a certificate of divestiture. *See id*. § 1043(b)(3). When Mr. Paulson becomes Secretary of the Treasury, however, he will be subject to another provision, 31 U.S.C. § 329(a)(1)(D), under which "the Secretary of the Treasury and the Treasurer may not . . . be involved in buying or disposing of obligations of a State or the United States Government." An officer who violates the prohibition in section 329 "shall be fined $3,000, removed from office, and thereafter may not hold an office of the Government." *Id*. § 329(a)(2).

We understand that before May 2002 the two statutes were reconciled through interpretations under which the term "officer or employee" in 26 U.S.C. § 1043 was taken to apply when a Secretary or Treasurer was confirmed by the Senate and commissioned by the President, but the terms "Secretary of the Treasury and the Treasurer" in 31 U.S.C. § 329 were taken to apply only when those incoming officials took the oath of office. Thus, under these interpretations, after the President signed the commission of an incoming Secretary of the Treasury or Treasurer, the official could receive a certificate of divestiture, sell the conflicting investments, and purchase government bonds with the proceeds of the sale, as long as he completed this process before taking the oath of office. In 2002, however, we issued an opinion concluding that the conflict of interest laws under title 5 and title 18 of the U.S. Code apply to an incoming official when he becomes an "officer or employee" under the definitions in title 5, *see* 5 U.S.C. §§ 2104, 2105 (2000), and that a person becomes an officer or employee as defined in title 5 only when he begins the duties of the office. *Application of Conflict of Interest Rules to Appointees Who Have Not Begun Service*, 26 Op. O.L.C. 32 (2002) ("2002 Opinion"). Because a certificate of divestiture may be issued when an "officer or employee" has to sell property to comply with the conflict of interest requirements under titles 5 and 18, our 2002 Opinion raises the question whether the terms "officer or

employee" in 26 U.S.C. § 1043 must now be given the same meaning as in titles 5 and 18. If so, a certificate of divestiture could not be issued until the incoming Secretary had begun his duties, and, as explained below, 31 U.S.C. § 329 at that time would forbid rolling over the sale proceeds into government bonds.

## II.

### A.

We believe the term "officer" in 26 U.S.C. § 1043 is best interpreted in light of the purposes of the law, and consistent with the traditional holding of the Supreme Court in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), to include an incoming officer whose commission has been signed by the President but who has not yet taken the oath of office or entered on the duties of the office.[2]

The term "officer" is susceptible of different meanings depending on the context in issue. According to the traditional understanding explained by the Supreme Court in *Marbury*, a person becomes an "officer" once his appointment to the office is complete, and the President completes the appointment by signing the commission. Chief Justice Marshall in *Marbury* wrote that, when the President signs the commission, "the *officer* is appointed," 5 U.S. at 157 (emphasis added), and that the appointment "create[s] the officer," *id*. at 156.[3] *See also Appointment of Midshipman at Naval Academy—Revocation*, 28 Op. Att'y Gen. 180, 187 (1910) (characterizing *Marbury* as holding that when the appointment was complete, Marbury "was . . . an officer").[4] The appointee's undertaking the duties of the office is irrelevant to this use of the term "officer." For that reason, "[w]hen a person, appointed to any office, refuses to accept that office, the successor is nominated in the place of the person who has declined to accept, and not in the place of the person who had been previously in office, and had created the original vacancy." *Marbury*, 5 U.S. at 161–62.

As Justice Joseph Story wrote, "[t]he *officer* appointed [by the signing of the commission] has then conferred on him legal rights, which cannot be resumed [by

---

[2] We do not here construe the meaning of "employee" in 26 U.S.C. § 1043.

[3] There is a doctrine that, where an appointee would serve at the pleasure of the President, the President may reconsider his decision to appoint the officer even after the commission is signed and may still decline to make the appointment by arresting the commission in his office—i.e., before it leaves the immediate control of the President. *See Case of Franklin G. Adams*, 12 Op. Att'y Gen. 304, 306 (1867). Once the commission leaves the President's office, however, this doctrine would not apply.

[4] One sentence in the 2002 Opinion stated that appointment "does not *ipso facto* make the appointed person an officer or employee" under *Marbury*, 26 Op. O.L.C. at 36, but the context of the sentence was a treatment of need for an appointee to accept the office before its duties and powers become his. The passage cited an Attorney General opinion treating acceptance of an office as "the assumption of official responsibility." *See Acceptance of a Promotion*, 12 Op. Att'y Gen. 229, 230 (1867).

the President].” Joseph Story, *Commentaries on the Constitution of the United States* 573 (Ronald D. Rotunda & John E. Nowak eds., 1987) (1833) (emphasis added). Thus, relying in part on *Marbury*, we have concluded that “where two officers in the same body are commissioned on different dates, the officer commissioned first is the senior.” *Determination of Date of Commencement of Service of Federal Officers—Renegotiation Board*, 1 Op. O.L.C. 121, 121 (1977). And, although the current rule is different, *Marbury* states that “the salary of the *officer* commences from his appointment” on the date of the commission. 5 U.S. at 161 (emphasis added); *but see Term of Judicial Salaries*, 7 Op. Att’y Gen. 303, 307 (1855) (the statement in *Marbury* “is not good law in the broad generality of the proposition”).

By contrast, someone becomes an “officer or employee” for purposes of titles 5 and 18 of the U.S. Code only when he begins his official duties. See 2002 Opinion, 26 Op. O.L.C. at 32. Under 5 U.S.C. § 2104, an officer is defined as someone (1) “required by law to be appointed in the civil service by [the President; a court of the United-States, the head of an Executive agency; or the Secretary of a military department] acting in an official capacity,” (2) “engaged in the performance of a Federal function under authority of law or an Executive act,” and (3) “subject to the supervision” of the President or the head of an executive agency or military department. This special definition leads to the conclusion that, until someone is actually performing a federal function under the supervision of a federal official, he is not yet an “officer” within the meaning of section 2104. And although title 18 does not define the term, we have relied on the title 5 definition of “officer” and “employee” as “‘the most obvious source of a definition’ for title 18 purposes.” 2002 Opinion, 26 Op. O.L.C. at 32 (quoting *Applicability of Executive Order No. 12674 to Personnel of Regional Fishery Management Councils*, 17 Op. O.L.C. 150, 154 (1993) (“*Fishery Management Councils*”) (quoting *Status of an Informal Presidential Advisor as a “Special Government Employee,”* 1 Op. O.L.C. 20, 20 (1977) (“*Informal Presidential Advisor*”))).

The 2002 Opinion, which set out this view of the meaning of the terms “officer” and “employee,” observed that we had applied the title 5 statutory definitions of “officer” and “employee” to the conflict of interest restrictions in Executive Order 12674, Principles of Ethical Conduct for Government Officers and Employees, 3 C.F.R. 215 (1989 Comp.), and the Standards of Ethical Conduct for Employees of the Executive Branch, 5 C.F.R. pt. 2635 (2006). *See* 2002 Opinion, 26 Op. O.L.C. at 33 (citing *Fishery Management Councils*, 17 Op. O.L.C. at 150 n.2, 158). We explained our earlier reasoning:

> First, we noted that we had turned to the title 5 definitions for guidance in interpreting the criminal conflict of interest laws, and “[b]ecause the objectives of the Order and its implementing regulations are closely related to those of the conflicts statutes, we [thought] it reasonable to look to title 5’s definition of ‘employee’

> when elucidating the Order." *Id*. at 154 (citation omitted). Second, the Executive Order adopts the definition of "agency" from title 5, with certain exceptions, Exec. Order No. 12674, § 503(c); and "[w]e [thought] it unlikely that the Order was intended to cover personnel who were employed by 'agencies' within the meaning of title 5 but who were not themselves 'employees' within the same title." 17 Op. O.L.C. at 154. Third, while the Executive Order states generally that it is based on the authority vested in the President "by the Constitution and laws of the United States," Exec. Order No. 12674, pmbl., but does not specify the authorizing statutes, "the most obvious statutory source of authority" is the President's power under title 5 to "prescribe regulations for the conduct of employees in the executive branch," 5 U.S.C. § 7301 (2000), and this authority brings into play the definition of "employee" in title 5. 17 Op. O.L.C. at 154.

2002 Opinion, 26 Op. O.L.C. at 33. In using the three-part test from title 5 to interpret conflict of interest restrictions found outside that title, we thus relied on the purposes of, as well as underlying legal authorities for, these other restrictions. Similarly, in applying the three-part test to the criminal conflict of interest restrictions in title 18, we underscored the specific nature of criminal prohibitions. We observed that the rule of lenity weighed in favor of not diluting the test and thus broadening the application of the criminal sanctions in ways that could have harsh results. *Id*. at 34.

Section 1043 of the federal tax code does not regulate the conduct of officials but offers a means to facilitate their compliance with the ethics laws, including compliance required as a condition of entering into office. In light of this purpose, we believe that the term "officer" in section 1043 is best read to have the traditional meaning laid down in *Marbury v. Madison*. An incoming official must have the capacity to avoid conflicts from the moment he begins service, where the circumstances so demand. He may, for example, own substantial amounts of stock that would create a financial conflict under 18 U.S.C. § 208(a) (2000) in an area where he would need to take urgent action immediately upon assuming the duties of his office. If the official's holdings would be sufficiently "substantial as to be deemed likely to affect the integrity of the services which the Government may expect from such officer," he would be ineligible for a waiver under 18 U.S.C. § 208(b)(1). Foreseeing such a problem, and bearing in mind the obligation of officers and employees "to avoid any actions creating [even] the appearance that they are violating the law or the ethical standards promulgated pursuant to" the President's direction, *see* Exec. Order No. 12674, § 101(n), 3 C.F.R. at 216, *as amended by* Exec. Order No. 12731, 3 C.F.R. 306, 308 (1990 Comp.), the incoming official would need to divest himself of his holdings before entering on his duties. But unless there is some period, before he undertakes the duties of his office, during which he is an "officer" under 26 U.S.C. § 1043 and thus eligible for

a certificate of divestiture, he may lack any practical means to divest that property. Indeed, the unavailability of a certificate of divestiture for such officers would be "a significant disincentive to the acceptance of high level policy-making positions in the government because of the financial burdens imposed by reason of the recognition of gain," *To Serve with Honor: Report of the President's Commission on Federal Ethics Law Reform* 25 (1989), and might dissuade some officials from consenting to serve. If, however, a certificate of divestiture may be granted when the President signs the commission but before the officer begins his duties, such a consequence—which we cannot believe Congress intended—can be avoided.

The language of section 1043, moreover, reveals that the provision is, in part, specifically designed to deal with incoming officials. A certificate of divestiture is available not only if the Director of OGE finds divestiture necessary to avoid conflicts of interest—a determination that might apply to either incoming or incumbent officials—but also specifically is available if divestiture is "requested by a congressional committee as a condition of confirmation." 26 U.S.C. § 1043(b)(2)(A). This specific focus on incoming officials reinforces the conclusion that section 1043 should be read to permit an official to resolve conflicts before he begins work.

Under 26 U.S.C. § 1043(b)(2), a certificate of divestiture can be issued only if a sale of property is "reasonably necessary to comply with any Federal conflict of interest statute, regulation, rule, or executive order (including section 208 of title 18, United States Code), or requested by a congressional committee as a condition of confirmation." Given the purposes of section 1043, we believe that this judgment can be made as of when the incoming official becomes an "officer" in the traditional sense just outlined. The Director of OGE, at that point, can determine whether the officer, to achieve compliance with federal conflict of interest rules upon his beginning the duties of his office, needs to divest himself of any property holdings.[5]

This interpretation, as we understand the facts, accords with existing practice as to the timing of certificates of divestiture. OGE's view has long been that the Director could issue a certificate when the President signed the incoming officer's commission. The present issue is, therefore, whether this interpretation should be overturned because of our 2002 Opinion, which found that the conflict of interest laws under titles 5 and 18 do not apply to an incoming officer until he begins the duties of his office. Our interpretation here gives the term "officer" a different meaning in 26 U.S.C. § 1043 from the meaning that the term has in the conflict of interest laws in title 5 and title 18. Arguably, given the absence of a statutory

---

[5] Section 1043 also includes a cross-reference to a definition in title 18, but it does so only to say that a "special Government employee as defined in section 202 of title 18" is not eligible for a certificate of divestiture. 26 U.S.C. § 1043(b)(1)(A). The cross-reference would not support any inference that the meanings of terms in title 18 should apply to section 1043.

definition governing the provision in title 26, the title 5 definition could be "the most obvious source of a definition," just as we concluded it was for title 18. A certificate of divestiture may be issued when an "officer or employee" has to sell property to comply with the conflict of interest requirements, most of which are in or pursuant to titles 5 and 18, and it therefore might be argued that section 1043 should incorporate the same meaning of "officer" that applies under those titles and is ultimately traced to 5 U.S.C. § 2104. We nonetheless conclude that employing a different interpretation of the term "officer" in the context of section 1043 is fully consistent with the differing purposes of this provision and the conflict of interest laws of titles 5 and 18. Furthermore, although the 2002 Opinion reached its conclusion on the basis of the express statutory definition of "officer" in title 5 and the longstanding interpretation that title 18 should be given the same meaning, we noted that our interpretation "enable[d] an appointee to wind up his private affairs in an orderly manner (presumably in consultation with the Administration) and therefore [could] be critical to recruiting qualified appointees in the first place." 26 Op. O.L.C. at 37. The issuance of a certificate of divestiture upon the President's signing of the commission, but before the officer's entering on his duties, serves the same ends.[6]

## B.

In keeping with the longstanding interpretation of the Treasury Department, we believe that, for purposes of 31 U.S.C. § 329, Mr. Paulson will not become "[t]he Secretary of the Treasury" until he takes the oath of office or enters on the duties of the office. This understanding of the meaning of "[t]he Secretary of the Treasury" accords with the purposes of 31 U.S.C. § 329. The provision, in substantially the same form, was enacted in 1789 as part of the statute creating the Treasury Department. Act of Sept. 2, 1789, ch. 12, § 8, 1 Stat. 65, 67 (1789).[7] It was intended to prevent Treasury officials from "speculating in the public funds." See 1 Annals of Cong. 611 (1789) (statement of the sponsor, Rep. Aedanus Burke); *see also Treasurer of the United States—Philippine Land Purchase Bonds*,

---

[6] We recognize that some agencies of the government do not insist that incoming officials achieve immediate compliance with provisions that forbid them from holding or trading in particular kinds of property. On the other hand, the Treasury Department has consistently taken the view, both under 31 U.S.C. § 329 and under the statute on the Comptroller and Deputy Comptroller of the Currency, 12 U.S.C. § 11 (2000), that these statutory bars apply immediately to incoming officials upon their taking the oaths of office.

[7] As originally enacted, the provision stated that officials at the Treasury Department could not "be concerned in the purchase or disposal of any public securities of any State, or of the United States." 1 Stat. at 67. This language remained in the statute until 1982, when the current language was substituted "to eliminate unnecessary words and for consistency in the revised title" 31. 31 U.S.C. § 329 note. The 1982 amendment was "not [to] be construed as making a substantive change in the law[] replaced." Pub. L. No. 97-258, § 4(a), 96 Stat. 884, 1067 (1982).

25 Op. Att'y Gen. 98, 99 (1903) ("The obvious purpose of [the] law, as shown throughout the section, is to prohibit personal interest in such bond issues and certain other affairs and business, and private emolument or gain in the transaction of *any* business in the Treasury Department."). Perhaps one motive for the provision was a concern that officials in the Treasury would buy state bonds whose value would be increased if the United States (as it later did) assumed the debts incurred by the states in the Revolutionary War. Ideas about assumption were circulating even before the creation of the Treasury Department, *see* Stanley Elkins & Eric McKitrick, *The Age of Federalism* 112–13, 117–21 (1993); Ron Chernow, *Alexander Hamilton* 225 (2004); and the scope of the prohibition, which reaches trading in bonds but not the mere holding of them, suggests a focus on the use of inside information. *See also* William Maclay, *The Journal of William Maclay, United States Senator from Pennsylvania 1789–1791*, at 173–74 (Frederick Ungar Publishing 1965) (1890) (protesting against "a system of speculation for . . . engrossing certificates" of public debt). In any event, if an incoming Treasury Secretary completes his transactions in government bonds before he takes the oath or enters on the duties of his office, he cannot "speculat[e] in the public funds." He can have no opportunity to take any official action as Secretary, or use any nonpublic information, to gain any advantage in the trade.[8]

## III.

It follows, therefore, that if the Director of OGE issues a certificate of divestiture upon the President's signing of Mr. Paulson's commission, Mr. Paulson will be able to sell his Goldman Sachs stock and buy government bonds pursuant to that certificate, provided he completes these transactions before he takes the oath of office or enters on his duties as Secretary of the Treasury.

STEVEN G. BRADBURY
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[8] An OGE regulation, which addresses the use of a certificate of divestiture, includes, as an example, the following:

> The Secretary of Treasury sells certain stock after receiving a Certificate of Divestiture and is considering reinvesting the proceeds from the sale into U.S. Treasury securities. However, because the Secretary of Treasury is prohibited by 31 U.S.C. 329 from being involved in buying obligations of the United States Government, the Secretary cannot reinvest the proceeds in such securities. However, she may invest the proceeds in a diversified mutual fund.

5 C.F.R. § 2634.1006(a), ex. 2 (2006) (citation omitted). By its terms, this example covers "[t]he Secretary of Treasury" but does not specify when an incoming official assumes that office.